NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2408
_____

UNITED STATES OF AMERICA

v.

RODERICK RANDALL OUTRAM,
Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 1:03-CR-00115-001)
District Judge: Honorable Chief Judge Yvette Kane
_____

Argued: April 26, 2011
_____

Before: SLOVITER, GREENAWAY, JR., Circuit Judges, and POLLAK,* District Judge

(Opinion Filed: September 26, 2011)
_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

_____

* Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

Roderick Outram ("Outram" or "Appellant") appeals the District Court's denial of his habeas corpus petition, pursuant to 28 U.S.C. § 2255. Outram claims that he received ineffective assistance of counsel during his § 1326 guilty plea because his counsel did not contest an in absentia deportation order. Outram fails to meet the requirements of 8 U.S.C. § 1326(d). For the reasons explained below, we will affirm.

## I. BACKGROUND

We write primarily for the parties and recount only the essential facts.

Outram is a native and citizen of Barbados. He came to the United States on an immigrant visa April 8, 1978, and was a lawful, permanent resident. In November 1990, Outram was convicted of drug possession and incarcerated in a New York correctional facility. Due to his status as a non-citizen offender, Immigration officials began investigating Outram's eligibility for deportation. In an Order to Show Cause dated April 24, 1993, Outram was charged with deportability for having been convicted of a crime. Outram's hearing was scheduled for December 14, 1993. His attorney, Montgomery R. Carlin ("Carlin"), was notified. The INS sent a notice to Carlin by certified mail received on September 23, 1993, but did not inform Outram directly.[1] Carlin claimed he sent two notices to Outram — one on September 27, 1993, and the other on December 8, 1993. He received no response. Outram denies ever receiving a notice other than the one that arrived on the morning of the hearing (December 14, 1993). Outram asserts that, due to

_____

[1] Neither party claims that the INS was obligated to inform Outram directly.

2

the short notice, he arrived at the courthouse two hours late to discover that the Immigration Judge ("IJ") had entered a deportation order against him in absentia. Carlin did not appear at all.[2]

Carlin moved to reopen his deportation proceedings, claiming that Outram did not receive notice from his counsel until the morning of the deportation hearing; as a consequence, Outram arrived late to the courthouse to discover that his deportation had been ordered. By order dated March 28, 1994, the IJ rejected Outram's arguments, stating that the purported lack of notice did not constitute exceptional circumstances that would excuse his absence and thus compel a hearing.

Carlin then appealed to the Board of Immigration Appeals ("BIA" or "Board"). He made two arguments on Outram's behalf—the improper notice claim and that the complete denial of a rehearing was a drastically disproportionate penalty for missing a court date. The BIA affirmed the IJ's ruling denying the motion to reopen. Outram was subsequently deported to Barbados on August 4, 1994.

In November 2002, the INS received word from the Dauphin County District Attorney's office that one "Sean Brewster," a defendant on trial for drug charges in Pennsylvania, was in fact Outram. Outram was convicted and on November 1, 2002, received a sentence of three to six years. On May 14, 2003, a grand jury returned a one-

_____

[2] Carlin filed a timely appeal to reopen Outram's deportation proceedings based on improper notice.

count indictment charging Outram with unlawful reentry of a previously deported alien after a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[3] The indictment was predicated on the 1993 in absentia deportation order.

Ansar Ahmad ("Ahmad"), a privately retained attorney, represented Outram when he pled guilty to the illegal reentry charge in federal court in January 2004, pursuant to a written plea agreement. Ahmad failed to challenge the validity of the 1993 in absentia deportation order underlying the § 1326 violation. On April 29, 2004, the District Court imposed a sentence of 57 months, to run consecutive to Outram's state sentence. Outram appealed his conviction to this Court.

---

[3] The statute reads, in relevant part

(a) In general
Subject to subsection (b) of this section, any alien who--
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States,
\*\*\*
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) Criminal penalties for reentry of certain removed aliens
Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
\*\*\*
(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both;

8 U.S.C. § 1326.

4

Outram claimed his guilty plea was not voluntary and knowing due to Ahmad's inadequate representation in the District Court. In an unpublished opinion, United States v. Outram, 132 F. App'x 412 (3d Cir. 2005) ("Outram I"), this Court rejected that argument, stating that Outram assured the District Court that he understood the charges and had entered the plea agreement willfully. The panel affirmed the conviction, but remanded to the District Court for resentencing in light of the Supreme Court's holding in United States v. Booker, 543 U.S. 220 (2005). On remand, Ahmad challenged the validity of the 1993 in absentia deportation order for the first time, arguing for a downward departure from the original sentence. The District Court reimposed the 57-month sentence on August 2, 2005.

Outram appealed his sentence. Ahmad argued, first, that Outram's sentence was substantively unreasonable because it violated his due process rights. He then challenged the 1993 in absentia deportation order as an improper predicate for the illegal reentry charge because Outram's claim of inadequate notice in that matter allegedly was not accorded due weight by the IJ. Ahmad, however, did not raise Carlin's ineffective representation in the deportation proceeding as a ground for reconsideration.

In 2006, a panel of this Court affirmed the District Court's resentence in an unpublished opinion. United States v. Outram, 199 F. App'x 138 (3d Cir. 2006) ("Outram II"). First, the panel ruled that Outram's sentence was substantively reasonable. Second, the panel rejected the argument challenging the 1993 in absentia

5

order. The panel held that Outram's due process argument must fail because he had neglected to raise the issue at the outset of his appeals, and was foreclosed from doing so at that stage in the appeals process. Even if the argument had not been foreclosed, the court found that Outram's due process claim had no merit because he did not fulfill the § 1326(d) requirements based on his failure to appear at his deportation hearing.[4]

On June 21, 2007, Outram filed a pro se motion in the District Court to vacate, set aside, or correct his 2004 sentence, pursuant to 28 U.S.C. § 2255. Outram challenged the validity of his 2004 illegal reentry conviction in violation of 8 U.S.C. § 1326(a) and (b)(2). He asserted that he was denied effective assistance of counsel when Ahmad failed to collaterally challenge the 1993 in absentia order before advising him to enter a guilty plea. Outram argued that had counsel attacked the order at that critical point, the illegal reentry indictment would have been dismissed.

---

[4] Pursuant to 8 U.S.C. §1326, an alien in a criminal proceeding wishing to collaterally attack a previous deportation order or proceeding may only challenge the validity of the resulting deportation order if the alien demonstrates that:

> 1. the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> 2. the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> 3. the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

In a Report and Recommendation ("R & R") dated December 16, 2008, the Magistrate Judge recommended that Outram's motion be denied without a hearing. He relied on our statement in Outram II that the 1993 in absentia order was not fundamentally unfair. On April 16, 2010, the District Court adopted the Magistrate Judge's R & R in denying Outram's request for a Certificate of Appealability ("COA").

Outram filed a timely notice of appeal on May 12, 2010. A petition for COA followed on June 10, 2010. By order dated October 15, 2010, this Court issued a COA to determine whether Outram was denied effective assistance of counsel when federal counsel failed to challenge the 1993 in absentia deportation order that was the predicate for his 2004 illegal reentry conviction.

## II. **JURISDICTION AND STANDARD OF REVIEW**

The District Court had jurisdiction over this case, pursuant to 28 U.S.C. § 2255. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 1291, 2253, and 2255. Because this issue is purely legal, our review is plenary. United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

## III. **ANALYSIS**

Outram is entitled to §2255 relief if he was denied effective assistance of counsel because of Ahmad's failure to challenge the 1993 in absentia deportation order that was the predicate for his illegal reentry conviction. Under Strickland v. Washington, 466 U.S. 668 (1984), an individual is denied effective assistance of counsel if he can show:

7

> First, . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, . . . that the deficient performance prejudiced the defense.

Id. at 687.[5]  To establish deficiency in counsel performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688. There is a strong presumption that counsel's performance is within the wide range of reasonable performance. Id.  A strategic choice made after a thorough investigation is "virtually unchallengeable." Id. at 690.

To show prejudice in the context of a guilty plea, such as Outram's, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id.

Outram's ineffective assistance of counsel claim is based on Ahmad's failure to contest the 1993 in absentia order.  The resolution of our inquiry into ineffective assistance of counsel thus depends largely on whether an attempt to challenge the 1993

---

[5] Our analysis of the deficiency and prejudice prongs does not have to proceed in any specific order; it is likely often "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." Strickland, 466 U.S. at 697.

order would have been successful. See Id. at 60. Only if such a challenge would have been successful will we inquire whether "there is a reasonable probability that, but for counsel's errors, [Outram] would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

A. Collateral Attack on Underlying Removal Order

An alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 may challenge the underlying removal order under certain circumstances. United States v. Charleswell, 456 F.3d 347, 351 (3d Cir. 2006). As noted, (1) the alien must have exhausted administrative remedies to seek relief against the order; (2) the deportation proceedings at which the order was issued must have improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order must have been fundamentally unfair. See 8 U.S.C. § 1326(d).[6]

---

[6] In Outram II, we held that Outram was foreclosed from collaterally attacking his 1993 deportation order under United States v. Pultrone, 241 F.3d 306, 307-08 (3d Cir. 2001) because he failed to raise that issue in his original appeal. We stated that his challenge also failed on the merits because the § 1326(d) requirements were not met. Our discussion of the merits, however, is dicta and is not binding. See Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 355 (3d Cir. 2002) (after holding that defendants received inadequate notice and remanding on that basis, district court's comments about the merits of the case were "simply precatory and not necessary to the actual holding of the case. . . . Accordingly, they [we]re properly considered dicta.") (citing Gov't of the Virgin Islands v. Marsham, 293 F.3d 114 (3d Cir. 2002)). It is established that such dicta is not controlling. See Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 344 n.9 (3d Cir. 2000)

Moreover, the District Court did not treat Outram II as binding. The District Court, instead, merely agreed that Outram could not meet the requirements for collateral attack. (App. at 11 (citing Outram II)) ("reject[ing] Petitioner's arguments to the

We have held that "all three [requirements] must be met before an alien will be permitted to mount a collateral challenge to the underlying removal order." United States v. Torres, 383 F.3d 92, 99 (3d Cir. 2004). Thus, to show that challenging the validity of the deportation order would likely have been successful, Outram must show that he would have met the three § 1326(d) requirements.

As explained below, we find that Outram would not have met at least one of the § 1326(d) requirements, and therefore, his claim must fail because failure to challenge the 1993 in absentia deportation order could not have prejudiced Outram. We need not consider whether Outram has satisfied the first and third § 1326(d) elements because we conclude that he has not demonstrated that he was deprived of the opportunity for judicial review of his deportation order.

i. Deprivation of Opportunity for Judicial Review

Outram claims that his 1993 proceedings deprived him of the opportunity for judicial review because, allegedly, (1) he was denied effective immigration counsel; and (2) the IJ improperly treated his reasonable tardiness as a failure to appear, denying him due process.

a. Ineffective Assistance of Counsel

Outram's first argument regarding deprivation of immigration counsel relies on

---

contrary, which were also rejected in dicta by the Third Circuit in denying his direct appeal of this conviction.")

the assumption that a showing of ineffective assistance of counsel in the underlying deportation proceeding is sufficient to show a deprivation of the opportunity for judicial review under § 1326. We have not so held. Outram cites our decision Richardson v. United States, 558 F.3d 216 (3d Cir. 2009), to support the proposition that a "lack of counsel to represent [an] alien in removal proceedings 'has been found to deprive the alien of meaningful judicial review.'" (Appellant's Br. 26-27 (quoting Richardson, 558 F.3d at 224).) The actual holding from the quoted portion of Richardson is that "a failure to notify counsel that counsel's client is facing removal proceedings has been found to deprive the represented alien of meaningful judicial review." 558 F.3d at 224. This is a different proposition. Outram does not allege that his counsel was not notified that he faced removal proceedings. Richardson is inapposite.

The other counseled case upon which Outram relies for this proposition is United States v. Perez, 330 F.3d 97, 101-02 (2d Cir. 2003), which is not binding on this Court. In Perez, the petitioner collaterally attacked his underlying deportation order. The court, directly reviewing the district court's grant of Perez's motion to dismiss the indictment for illegal reentry, concluded that immigration counsel's failure to file an application for 212(c) discretionary relief from deportation was ineffective assistance of counsel and deprived Perez of the opportunity for administrative review of his deportation in violation of due process.

Even if we were to adopt the Second Circuit's conclusion that failure to file an application for 212(c) relief can constitute ineffective assistance of counsel and deprive an alien of judicial review, Perez is distinguishable on its facts. Perez's counsel stated to the IJ that he intended to seek relief under 212(c). He was then directed by the IJ to file an application by a certain date, after which Perez would be deported, if he failed to do so or to appear for the scheduled hearing.

Although Carlin did not file a motion pursuant to 212(c), Outram has not made a comparable allegation that Carlin represented to the IJ or the BIA that he would seek 212(c) relief, and then failed to do so.[7] Additionally, the court noted that "by the time any judicial remedy might have been pursued, Perez had already been deported," and thus "the federal courts no longer had jurisdiction to directly review his deportation order." Perez, 330 F.3d at 101 n.3, 103 n.5.

In the pro se context, where failure to notify an alien of the right to appeal has been found to be a deprivation of judicial review, the circumstances are also distinguishable from Outram's allegations. Although what constitutes an "effective denial of judicial review" has not been "definitively determined," Charleswell, 456 F.3d

---

[7] This is not to say that Carlin is not without fault. More competent counsel would have ensured that his client knew about the scheduled removal hearing in advance of the morning of the scheduled appearance, and attended the hearing to preserve any record in his client's stead. However, in this case, any alleged ineffectiveness on the part of Carlin did not deprive Outram of judicial review. Outram had the opportunity to seek review of the in absentia deportation order, which the IJ, the BIA, and this Court determined did not deprive him of due process.

at 355, we have recognized that, in some circumstances, an IJ's failure to adequately explain to an alien his opportunity to appeal results in an uninformed waiver of that right because it deprives the individual of judicial review. Id. (collateral attack "could be made by aliens who had effectively been denied direct appeal because they were not given proper notice of the right to appeal.") (citing United States v. Fares, 978 F.2d 52, 56 (2d Cir. 1992)) (internal quotation marks omitted).

In Charleswell, we held that, despite a "monumental error" in a deportation hearing, the pro se defendant was not deprived of the opportunity for judicial review because he had an opportunity to appeal the deportation order. 456 F.3d at 353.[8] On direct review of Charleswell's conviction for illegal reentry under 8 U.S.C. § 1326, we found that, regarding his opportunity for judicial review, "there [wa]s no indication whatsoever that Charleswell was effectively precluded from appealing th[e] clearly adverse decision. He was told he had the right to appeal and does not claim that he failed to understand that right." Id.

By contrast, reviewing Charleswell's collateral challenge to his later 2001 reinstatement order of the same deportation, we found that he was denied the opportunity for judicial review of the reinstatement order. Charleswell "specifically argue[d] that

---

[8] The IJ in Charleswell mistakenly believed that the United States Virgin Islands were not a United States territory and subsequently found Charleswell deportable to the British Virgin Islands. Charleswell did not appeal the deportation order, was deported to the British Virgin Islands, and reentered the United States.

13

[t]he 2001 reinstatement of the deportation order also violated [his] rights because he was never informed of his right to appeal to a federal court of appeals, and the reinstatement statute ought not be applied retroactively to [his] conduct." Id. at 354 (internal citations omitted). We found that where an alien is misled to believe that he has no opportunity for judicial review, the lack of an affirmative notice of the right to an appeal may combine to constitute a denial of the meaningful opportunity for judicial review, satisfying both § 1326(d)(2) and United States v. Mendoza-Lopez, 481 U.S. 828 (1987). Id. at 357 (failure to notify Charleswell of his right to appeal, when combined with misleading language in the reinstatement forms, deprived him of the opportunity for judicial review).

Even if we were to find the notice of appeal inquiry relevant in the counseled context, we need not inquire here because Outram makes no claim that he did not have notice of his right to appeal his deportation order or of the availability of judicial review. Carlin, Outram's immigration counsel, filed a motion to reopen the deportation proceedings which the IJ denied. Carlin appealed that decision to the BIA. Outram does not allege that he was prevented from obtaining judicial review of the BIA's order denying the motion to reopen, that the decision to appeal from that order to this Court, as permitted by statute, was prevented in any way; or that Carlin represented to the Board

14

that he would appeal its decision and did not.[9] Outram has made no allegation that he was deprived of the opportunity to appeal the IJ's and BIA's denial of his motion to reopen; he merely failed to pursue that course of action.

   b. Failure to Appear as Denial of Due Process

Outram also claims that by treating his lateness as a failure to appear, the IJ denied him the opportunity for judicial review under §1326(d) because this treatment amounted to a denial of due process. Outram primarily relies on our decision in Cabrera-Perez v. Gonzalez, 456 F.3d 109 (3d Cir. 2006), where we did not address § 1326. In that case, we reversed the BIA's denial of Cabrera's motion to reopen his in absentia removal. We found that the IJ and BIA abused their discretion in denying the motion. The IJ's treatment of Cabrera's arrival fifteen to twenty minutes late as a failure to appear, where there had been no prior instances of tardiness and the IJ was either still on the bench or recently retired and close by, violated the alien's rights to due process. Id. at 116.

In Cabrera-Perez, we relied on decisions in which treatment of fifteen to twenty minute tardiness as failures to appear were held to violate aliens' due process rights. See Alarcon-Chavez v. Gonzales, 403 F.3d 343, 345-46 (5th Cir. 2005); Jerezano v. INS, 169

---

[9] At the time of Outram's 1993 deportation hearing, 8 U.S.C. § 1105(a) provided for federal appellate jurisdiction of final orders of deportation, pursuant to administrative proceedings under 8 § 1252(b). See Marrero v. I.N.S., 990 F.2d 772 (3d Cir. 1993); see 8 U.S.C. § 1252b(c)(4)(1994) (judicial review of order entered in absentia "confined to the issues of the validity of the notice provided to the alien, to the reasons for the alien's not

F.3d 613, 615 (9th Cir. 1999); <u>see also</u> <u>Nazarova v. INS</u>, 171 F.3d 478 (7th Cir. 1999) (where alien arrived at removal hearing two hours late because she was waiting for translator, the court found a due process violation because alien had not received a meaningful opportunity to be heard).

Neither our own precedent in <u>Cabrera-Perez</u>, nor the cases it relies upon specifically address whether the appellants had been deprived of an opportunity for judicial review under § 1326(d) by virtue of the treatment of their tardiness as failures to appear. Thus, even if the IJ's treatment of Outram's two-hour tardiness as a failure to appear were considered a due process violation on its own, the case law does not support a finding of a deprivation of judicial review under § 1326(d).

Because we find that Outram did not establish that an attempt to challenge the 1993 <u>in absentia</u> deportation order would have been successful, there is no prejudice and we need not inquire into whether Outram's counsel's performance fell below an objective standard of reasonableness. <u>Hill</u>, 474 U.S. at 59.

## IV.  <u>CONCLUSION</u>

For the reasons explained above, we find that Outram has not demonstrated ineffective assistance of counsel on the basis that his federal counsel failed to challenge the 1993 <u>in absentia</u> deportation order because he has not established that he meets the §

---

attending the proceeding, and to whether or not clear, convincing, and unequivocal evidence of deportability has been established.")

1326(d) requirements.  We will affirm the District Court's denial of Outram's § 2255

motion.

<u>Pollak, J., Dissenting</u>

As the court recognizes, Outram's claim that Ansar Ahmad provided ineffective assistance of counsel while representing Outram on the 2004 illegal reentry charge hinges upon whether Ahmad would have been able to successfully collaterally attack the 1993 *in absentia* deportation order. According to Outram, the 1993 order was entered *in absentia* because his then-attorney, Montgomery Carlin, failed to fulfill some of the most basic duties of immigration counsel: providing timely notice to his client of an upcoming hearing at which the client's presence was required, and actually showing up at that hearing. We do not know whether Carlin did, in fact, fail so egregiously in his representation of Outram, because Outram has, up to now, been denied the opportunity to prove his allegations through an evidentiary hearing.[1]

The court declines to remand this case for an evidentiary hearing on the ground that Outram cannot succeed in collaterally attacking the deportation order. Under 8 U.S.C. § 1326(d), an alien seeking to make such a collateral attack must show that (1) he "exhausted any administrative remedies that may have been available"; (2) "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally

---

[1] It is worth noting, however, that in the only court of appeals case that mentions Montgomery Carlin, he was found to have provided ineffective assistance of counsel in an immigration matter. *See Rabiu v. INS*, 41 F.3d 879, 883 (2d Cir. 1994) (holding that Carlin provided ineffective assistance by failing to file a section 212(c) waiver application on behalf of an alien who was eligible for and likely to receive such a waiver).

unfair." According to the court, an alien cannot satisfy the second of these requirements by showing that he received ineffective assistance of counsel in the deportation proceeding. This narrow construction of the "deprivation of judicial review" requirement is not required by our precedent, and has been rightly rejected by one of our sister circuits.

The court's opinion over-reads our decision in *United States v. Charleswell*, 456 F.3d 347 (3d Cir. 2006). *Charleswell* involved a 1991 deportation hearing that the alien, unaccompanied by counsel, actually attended. In the hearing, the immigration judge ("IJ") made a serious error of law—based upon his mistaken belief that the United States Virgin Islands were not a United States territory—in the course of issuing an order deporting Charleswell. *Id.* at 353 & n.5. We found that Charleswell was not denied the opportunity for judicial review because he was present at the hearing and "was told he had the right to appeal." *Id.* at 353. Our decision in *Charleswell* also addressed a reinstatement order issued in 2001. We found that the 2001 order effectively denied Charleswell the opportunity for judicial review because it did not notify him of his right to a direct appeal and also contained misleading language. *Id.* at 358.

*Charleswell* did not confront the issue presented in this case: whether an alien who *is* represented by counsel and who *misses* his deportation hearing as a result of his counsel's failure to provide him with notice was deprived of an opportunity for judicial review. Nowhere in *Charleswell* did we hold that an alien can *only* be deprived of judicial review through an immigration judge's failure to provide him with adequate,

2

non-misleading information concerning his appeal rights. *See id.* at 355 (acknowledging that what constitutes the denial of judicial review "has not been definitively determined"). And in no other decision has our court addressed whether an alien may show that he was denied an effective opportunity for judicial review through the ineffectiveness of his attorney. The court's narrow reading of Section 1326(d)(2) is thus not required by our precedents.

Moreover, the court's holding cannot be squared with a Second Circuit decision that appears directly on point. In *United States v. Perez*, the Second Circuit held that "[d]eprivation of the opportunity for judicial review can be established by demonstrating ineffective assistance of counsel." 330 F.3d 97, 101 (2d Cir. 2003). The court concluded that Perez's counsel provided deficient representation by failing to file a section 212(c) application after stating at the deportation hearing that he would do so. *Id.* at 102. The court suggests, without elaboration, that *Perez* is distinguishable on its facts because "Outram has not made a comparable allegation that Carlin represented to the IJ or the BIA that he would seek 212(c) relief, and then failed to do so." Slip op. at 12. It is difficult to fathom why this factual distinction should make any difference: If Outram's factual allegations are correct, Carlin's failure to provide notice to Outram was *the very reason* why Outram did not make a timely appearance at the deportation hearing, at which he was going to seek relief under section 212(c). Moreover, Carlin's apparent failure to appear at all at the hearing prevented Carlin from requesting an extension on Outram's behalf. Because of these failings, Outram was never able to file a section

3

212(c) application. Thus, Carlin's failure to provide notice and his failure to appear were every bit as damaging to Outram as Perez's attorney's failure to file a 212(c) application was to Perez.

I would adopt the Second Circuit's holding in *Perez*, which recognizes that an alien can be denied an effective opportunity for judicial review through his attorney's deficient performance, and I would remand this case for an evidentiary hearing to evaluate the truth of Outram's assertions regarding Montgomery Carlin's conduct. I therefore respectfully dissent.