

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-2009

# USA v. Richardson

Precedential or Non-Precedential: Precedential

Docket No. 07-4409

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Richardson" (2009). *2009 Decisions.* Paper 1631.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1631

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 07-4409
_____

DARVIN E. RICHARDSON,

Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 07-cr-00018)
Chief District Judge: Honorable Curtis V. Gómez
_____

Argued December 8, 2008

Before: FISHER, JORDAN, and STAPLETON, *Circuit Judges.*

(Filed : March 04, 2009 )
_____

Thurston T. McKelvin
Jesse A.Gessin   [ARGUED]
Federal Public Defender's Office
P.O. Box 1327
51B Kongens Gade
Charlotte Amalie ,St. Thomas
 USVI , 00804-1327
        *Counsel for Appellant*

Anthony J. Jenkins
Ishmael A. Meyers, Jr.  [ARGUED]
United States Attorney's Office
5500 Veterans Building , Suite #260
Charlotte Amalie, St Thomas
USVI   00802-6924
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge.*

Darvin E. Richardson appeals from a judgment of conviction on one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(2).  Richardson contends that the District Court wrongly decided that he could not collaterally challenge his prior deportation.  For the reasons that follow, we will affirm.

2

## I.   Background

Richardson was arrested on November 30, 1989, in St. Thomas, after attempting to smuggle marijuana onto the island aboard a commercial flight. He subsequently pled guilty to one count of Importation of a Controlled Substance, in violation of 21 U.S.C. § 952, and one count of Possession of a Controlled Substance Aboard an Aircraft Arriving in the United States, in violation of 21 U.S.C. § 955. He was sentenced to four months imprisonment on each count, the terms to run concurrently, and three years of probation. At the time of judgment, Richardson had been lawfully admitted for permanent residency in the United States for almost ten years and he claimed to have children who were U.S. citizens.

Upon entry of the criminal judgment in March of 1990, Richardson was released for time served. Two months later, in May of 1990, the government initiated deportation proceedings, serving Richardson with an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien.

On May 21, Richardson, then unrepresented by counsel, signed a waiver (the "May Waiver") in which he stipulated to the charges against him, accepted deportability, requested immediate departure to St. Kitts, and waived his right to appeal the deportation order. That stipulation was voided, however, when Hans Burgos, an attorney for the United States Immigration and Naturalization Service ("INS") in Puerto Rico, crossed out and initialed key paragraphs in it. After speaking with Richardson, Burgos had become convinced that Richardson "was not aware, nor was he well

3

informed, of the consequences of signing the stipulation."
(App. at 23.)

The next day, May 22, David Iverson entered his appearance as counsel for Richardson and, soon thereafter, on June 19, Richardson again signed a waiver (the "June Waiver"). It was identical in content to the May Waiver. Richardson says that he does not recall either Iverson or an immigration judge explaining to him the effect of the waiver. A Mr. R. Ortiz, an INS attorney, signed the June Waiver on behalf of the United States.[1] The document does not contain a signature line for Richardson's counsel and Iverson did not sign it.

The United States Department of Justice sent Richardson a letter, which is dated June 22, 1990, (the "Deportation Letter") and contains the following paragraph:

> Should you wish to return to the United States you must write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. By law ... any deported person who within five years returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00.

---

[1] Mr. Ortiz's first name does not appear in the record.

(App. at 27.) On or about the same day, Richardson was deported to St. Kitts.

Some seventeen years later, Richardson tried to return to St. Thomas. On March 6, 2007, he flew to the island but was detained at the airport when he showed his valid British passport and his name triggered an alert that he had previously been convicted of a controlled substances violation and had been deported. According to Richardson, the mother of his children had wrongly informed him that he could legally enter the Virgin Islands without having obtained the Attorney General's consent. On April 4, he was indicted on one count of unlawful entry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2).

Richardson filed a motion to dismiss the indictment. In particular, he collaterally attacked his deportation; he claimed that the United States Sentencing Guidelines pertaining to § 1326(b)(2) are unconstitutional; and he argued that the government should be collaterally estopped from charging him under § 1326(a) because of representations that it had made in the Deportation Letter. The District Court held a series of hearings on the motion. Neither Iverson nor any INS attorneys who worked on the matter testified as to what had transpired during Richardson's deportation proceedings. On June 22, 2007, the District Court denied Richardson's motion to dismiss,[2] concluding that he could not collaterally

---

[2]The court entered an amended order on June 25 in which it corrected a mistake as to Richardson's birthday but

5

attack his deportation and that his challenge to the Sentencing Guidelines and his collateral estoppel argument had to await later proceedings. Richardson appeals only the conclusion that he cannot press a collateral attack of his deportation.

## II. Discussion[3]

At the heart of Richardson's appeal is his claim that the June Waiver is not valid because it was not intelligently executed. Not only does Richardson contest the validity of the June Waiver, he also claims that, by presuming it to be valid, the District Court improperly shifted the burden of proof as to waiver from the government to him. Richardson contends that he is permitted to collaterally challenge his

_____

made no substantive changes. We review that amended order for purposes of this opinion.

[3]The District Court of the Virgin Islands had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* the District Court's determination that Richardson may not collaterally challenge his deportation. *United States v. Charleswell,* 456 F.3d 347, 351 (3d Cir. 2006) (citing *United States v. Torres*, 383 F.3d 92, 95 (3d Cir. 2004)). The District Court's factual findings are reviewed for clear error while we exercise plenary review over its interpretations of law. *Charleswell*, 456 F.3d at 351 (citing *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002)).

deportation because, first, he is exempted from any requirement regarding exhaustion of administrative remedies, second, the District Court's determination that he waived his right to judicial review is erroneous, and, third, his deportation proceeding was fundamentally unfair.  Because Richardson's collateral attack on his deportation is premised on the invalidity of the June Waiver, we address at the outset the threshold issues of whether the District Court improperly placed the burden of proving invalidity on Richardson and whether the June Waiver is valid.  Then we turn to the merits of Richardson's collateral attack.

### A. The June Waiver Was Intelligently Executed and is Valid

We have not before addressed whether the government has the burden of proving the validity of a written waiver in an immigration proceeding or whether the burden falls on the alien to prove that the waiver is invalid.  We do so now and conclude that the burden is properly placed on the alien.

An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently.  *See United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987) ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."); *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) (waiver of right to administrative review of deportation will bar collateral review under 8 U.S.C. § 1326(d) only when it is voluntary and intelligent); *c.f. United States v. Muro-Inclan*,

7

249 F.3d 1180, 1183 (9th Cir. 2001) (Section 1326(d)'s exhaustion requirement "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."). However, such appellate rights and administrative remedies can be waived, and one way to signify a knowing and intelligent waiver is a written document to that effect. Other circuit courts, as well as the District Court here, have exercised the presumption that, when there is a written waiver, the waiver is valid, thereby implicitly placing the burden on the alien of proving any claim that the waiver was invalid. *C.f. United States v. Martinez-Rocha*, 337 F.3d 566 (6th Cir. 2003) (considering appellant's evidence that his waiver was unintelligent); *United States v. Rangel de Aguillar*, 308 F.3d 1134, 1137 (10th Cir. 2002) ("[Appellant] presented no evidence to demonstrate ... that the waiver she gave was not knowing and voluntary.").[4]

Contrary to Richardson's suggestion, we do not regard the result reached here by the District Court as in conflict with the decision of the Ninth Circuit Court of Appeals in *United*

---

[4]The government would have us draw the same inference from *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992). However, such an interpretation would be inappropriate as that court was merely reciting the government's argument that "[appellant] failed to show ... that his waiver ... [was] unknowing and unintelligent," rather than endorsing a theory of burden allocation. 964 F.2d at 406.

*States v. Lopez-Vasquez*, 1 F.3d 751, 753-54 (9th Cir. 1993). In any event, we find ourselves unpersuaded by the rationale of that case. The *Lopez-Vasquez* Court held that "the government bears the burden of proving the waiver," *id*., and that evidence of a mass, silent waiver was insufficient alone to carry that burden. The waiver at issue in *Lopez-Vasquez* was neither written nor individual. There, the immigration judge asked, "Gentlemen, if any of you do not understand about appeal, or if you have any questions about appeal, please stand now so that I can talk to you." *Id* at 753. After no one in the assembled group rose, the judge continued, "If any of you want to appeal your case to the higher court, ... please stand so that I can talk with you about that." *Id*. Again, no one rose. In rejecting the government's argument that the waiver was knowing and intelligent, the Court focused upon the particular risks created by such mass silent waivers:

> The immigration judge made no effort to determine whether Lopez-Vasquez individually wished to waive his right to appeal, and the mass waiver by silence made it impossible to determine whether he made a voluntary and intelligent decision to do so. Mass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows. The immigration judge's directive that to preserve the right to appeal a detainee must stand up "so that I can talk to you about that" did nothing to lessen this risk. Indeed, it tended to stigmatize detainees who wished to appeal and to convey a

9

> message that appeal was disfavored and
> contingent upon further discussion with the
> immigration judge.

*Id*. at 754. Given this focus on the risk inherent in the particular process before it, we are not confident that the *Lopez-Vasquez* Court would have found a signed, written waiver which expressly acknowledged the required understanding, insufficient to carry the government's initial burden of proof and shift that burden to the alien.

Moreover, in reaching its conclusion in *Lopez-Vasquez*, the Court relied on the Supreme Court's discussion of waiver in *Brewer v. Williams*, 430 U.S. 387 (1977), a case reviewing a criminal proceeding on a petition for habeas corpus. However, in a dissent from the order denying rehearing en banc in *Lopez-Vasquez*, Judge O'Scannlain and six other judges of the Ninth Circuit correctly pointed out that reliance on *Brewer* is misplaced in the immigration context and that the *Lopez-Vasquez* opinion is thus logically flawed. *See id*. at 758.

The *Lopez-Vasquez* panel drew a false parallel between the nature of the right protected by the Supreme Court in *Brewer* and that at issue in a waiver of administrative remedies and appellate rights in a deportation proceeding. *Brewer* concerned a right "indispensable to the fair administration of our adversary system of criminal justice[,]" 430 U.S. at 398, namely a criminal defendant's right to counsel, and, given the constitutional foundation of that right, the Supreme Court placed the heavy burden of demonstrating

10

any waiver of it on the government. *Id.* at 398-402. In *Lopez-Vasquez*, the dispute involved, as it does here, an alien's waiver of a "*statutory* right to judicial review of the result of a *civil* deportation proceeding." *Lopez-Vasquez*, 1 F.3d at 758 (O'Scannlain, J., dissenting from denial of rehearing en banc) (original emphasis). We have long recognized that deportation proceedings are civil in nature and that the rights and protections afforded to the defendant are therefore decidedly different from those available in the criminal context. *See Torres*, 383 F.3d at 103 ("[T]he procedural protections accorded to [aliens] in that context [i.e. removal proceedings] measure less than the panoply available to a criminal defendant."). There is no sound basis to equate either the kind of rights or the nature of the proceedings at issue in *Brewer* with those at issue in *Lopez-Vasquez*, and the *Lopez-Vasquez* per curiam opinion suggests none. Nor, for that matter, does Richardson. We therefore reject his insistence that the burden of proof described in *Brewer* "is no different in the context of deportations."

On the contrary, there is a distinction between fundamental constitutional rights – including the right to counsel at issue in *Brewer* – and rights granted by statutes, such as the administrative and appellate rights at issue here. *See Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 83 (1984) (acknowledging line of cases for "recognition of a critical difference between rights created by federal statute and rights recognized by the Constitution"). Indeed, even when constitutional rights are at stake, not all waivers are judged by the same standard. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973) ("Our cases do not

11

reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection.").  The placement of the burden of proof, like the standard for waiver, can be variable and contingent on the source of the right in play.  *See Northern Pipeline*, 458 U.S. at 84 (Where Congress has created a right, "it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof").

It may be helpful to begin by recognizing that, in the first instance, the burden of proving waiver in this case was on the government and that it carried its burden by producing the written waiver signed by Richardson.  Richardson's decision to contest that waiver required more of him than his mere assertion that the waiver should not count.  It required him to provide reasons and supporting evidence to explain why the waiver should not be given effect.  In sum, we conclude that, when challenging the validity of a written waiver of rights in a deportation proceeding, the alien bears the burden of proving that the waiver is invalid.[5]  Since

---

[5]Section 1326(d) plainly states that an alien may not challenge a deportation order's validity unless he or she "demonstrates" that all three statutory prerequisites are satisfied, one of which is exhaustion of any administrative remedies.  Therefore, the statutory language supports placing the burden of proof on the alien to demonstrate that a written waiver of rights is invalid where, as here, the alien argues that he or she is exempted from exhausting any administrative remedies.

12

Richardson had that burden with respect to the June Waiver, we turn to whether he has carried it.

Richardson contends that the June Waiver was invalid because he was not notified of his administrative remedies prior to signing it.  As proof, he relies heavily on the notation that INS attorney Burgos made when voiding the May Waiver, the notation saying that Richardson had not been "aware" or "well informed" of the consequences of signing that stipulation.  Richardson also attacks the June Waiver because his attorney did not sign it, and because the Immigration Judge allegedly failed to inform him that he might be eligible for discretionary relief under section 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c) (1995) (repealed by Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104-208, Div. C, § 304(b), 1996 U.S.C.C.A.N. (110 Stat.) 3009-597).  None of those arguments is sufficient.

First, Burgos's cancellation of the May Waiver shows at most only what Richardson knew in May, not what he had

---

Given the civil nature of deportation proceedings, an alien seeking to demonstrate the invalidity of a written waiver will be held to a "preponderance of the evidence" standard.  *See United States v. Martinez-Amaya*, 67 F.3d 678, 682 n.5 (8th Cir. 1995) ("[A]pplication of a 'preponderance of the evidence' standard of proof to an alien's collateral attack upon a prior deportation seems appropriate to us, in light of the fact that a deportation proceeding is civil in nature.").

learned by June. In the intervening month, he was represented by counsel and had further interactions with INS officials who presumably were aware of and not eager to replicate the defects their colleague Mr. Burgos had discovered in the May Waiver. It is entirely possible that Richardson was fully informed in June and simply decided that he wished to return to St. Kitts. As conceded by his counsel at oral argument, that possibility is as likely as any other explanation for his decision to sign the June Waiver, and, once we place the burden of proof on Richardson, his argument on this front fails.

Next, Richardson contends that the June Waiver should have been signed by his counsel, and we agree that would have been the better course, but that does not mean the waiver is invalid. The omission of a signature line for an attorney of record betrays a less than careful approach to memorializing the parties' agreement, but it is not an error of constitutional, statutory, or even regulatory dimension.

Finally, with regard to the Immigration Judge's failure to inform Richardson of potential relief under § 212(c), we have clearly stated before that "there is no constitutional right to be informed of possible eligibility for discretionary relief." *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005) (citing *Torres*, 383 F.3d at 105-06).[6]

---

[6]We also note that even when an alien satisfies the objective criteria for relief under § 212(c) – meaning that (1) he is the spouse, parent, or child of a U.S. citizen or lawful

### B. Richardson May Not Collaterally Attack His Deportation.

Having determined that Richardson has not proven his waiver to be invalid, we turn to his final contention on this appeal, that his deportation is subject to collateral attack. "Fundamental precepts of due process provide an alien subject to illegal re-entry prosecution under 8 U.S.C. § 1326 with the opportunity to challenge the underlying removal order under certain circumstances." *Charleswell*, 456 F.3d at 351. To mount a collateral challenge to his deportation, an alien must prove that, first, he "exhausted any administrative remedies that may have been available to seek relief against the [deportation] order;" second, "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;" and, third, "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d) (2008) (codifying *Mendoza-Lopez*, 481 U.S. at 835-37 (1987)). Richardson bears the burden of proof as to each element of that tripartite test, *see Torres*, 383 F.3d at 99, but he has not carried it as to any part.

---

permanent resident; (2) deportation would result in extreme hardship to that spouse, parent, and/or child; (3) the alien's admission would not undermine national welfare or security – relief is ultimately granted only at the discretion of the Attorney General.

15

### 1. Exhaustion of Administrative Remedies

Richardson does not contend that he has exhausted his administrative remedies as required by § 1326, but rather that he is exempted from the exhaustion requirement. He claims exemption on three bases: that the June Waiver was invalid; that the ineffective assistance of his counsel rose to the level of a due process violation; and that the INS lawyers created a conflict of interest by communicating with him. However, none of those contentions is supported by the record. First, as already discussed, nothing in the record undermines the facial validity of the June Waiver. As to Richardson's second claim, he has failed to produce any evidence that would permit us to conclude that his counsel was ineffective by Fifth Amendment standards.[7] Similarly, while Richardson contends that INS attorneys created a conflict of interest by

_____

[7] Because the Sixth Amendment right to counsel is inapplicable in immigration proceedings, the question is whether Richardson's counsel was so ineffective as to violate his Fifth Amendment due process rights. *See Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 130 (3d Cir. 2001). We note that it is unclear whether ineffective assistance of counsel constitutes an exception to the exhaustion requirement of § 1326. More broadly, we have yet to determine whether the exhaustion requirement is prudential, and therefore subject to exception, or jurisdictional. Because we conclude that Richardson has failed to produce evidence that his counsel was ineffective, we do not reach either of those issues.

directly informing him of his rights despite his having been represented by counsel, there is no proof in the record to support that or any other allegation of a conflict.

### 2. Opportunity for Meaningful Judicial Review

Likewise, Richardson's claim that he was denied meaningful judicial review of his deportation proceedings because his counsel was not informed of Richardson's own intent to sign the June Waiver is unsupported by the record. Richardson correctly points out that a failure to notify counsel that counsel's client is facing removal proceedings has been found to deprive the represented alien of meaningful judicial review. *See United States v. Dorsett*, 308 F. Supp. 2d 537, 543-44 (D.V.I. 2003) (due process violated where clerical error resulted in notice being provided to incorrect counsel). However, Richardson has not shown that the INS failed to notify his counsel of the immigration proceedings. Moreover, in contradiction to his contention that his attorney was not notified about the June Waiver, Richardson concedes in his briefing that it is "unclear" whether Mr. Iverson was given notice. In short, Richardson has not proven that he was deprived of the opportunity for meaningful judicial review.

### 3. Fundamental Unfairness

To establish that a deportation proceeding was fundamentally unfair, an alien must show both that there was a fundamental defect in the proceeding and that the defect caused him prejudice. *See Charleswell*, 456 F.3d at 358. An

alien can show that the proceedings had a fundamental defect by demonstrating either that he was deprived of a substantive liberty or property interest or that the INS violated procedural protections "such that the proceeding is rendered fundamentally unfair." *Id.* at 360. Nothing in Richardson's deportation proceedings constitutes a flaw of that nature. While Richardson raises a litany of purported procedural defects, all bearing on whether he was adequately informed of his rights to a hearing or administrative appeal, the issues raised are plainly covered by the June Waiver. Because the June Waiver is effective, those procedural defects cannot serve as the basis for a claim of fundamental unfairness. Further, Richardson's contention that his deportation proceeding was fundamentally unfair because he was not informed of his eligibility for § 212(c) relief is belied by our holding in *Torres*, in which we concluded that, because there is no due process right to be informed of the possibility of discretionary relief, a failure to inform does not render a deportation proceeding fundamentally unfair. *See* 383 F.3d at 106.[8]

---

[8] We acknowledge that it is an open issue in this Circuit whether an alien can demonstrate prejudice by showing that there is a reasonable likelihood that relief under § 212(c) would have been granted by the Attorney General, had the alien been adequately informed. However, we need not reach the issue of whether Richardson has demonstrated prejudice because we have already determined both that there was no fundamental defect in the deportation proceedings and that Richardson has failed to meet his burden on either the

18

## III. Conclusion

Richardson has failed to meet his burden of demonstrating that the June Waiver was invalid and has further failed to demonstrate the prerequisites for collaterally attacking his deportation. We therefore will affirm the judgment and conviction entered by the District Court.

---

exhaustion or opportunity-for-judicial-review prongs of the collateral attack inquiry laid out in § 1326(d).