**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3650
_____

FERNANDO RAMIREZ SEGOVIANO,
                                                            Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                            Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(BIA No. A200-687-279)

Immigration Judge: Charles Honeyman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 14, 2018

Before:  SMITH, Chief Judge, CHAGARES, FUENTES, Circuit Judges.

(Filed: June 18, 2018)

_____

OPINION*
_____

CHAGARES, Circuit Judge

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Fernando Ramirez Segoviano petitions this Court for review of the decision of the Board of Immigration Appeals ("BIA") denying his appeal of the Immigration Judge's ("IJ") refusal to reinstate his withdrawn application for cancellation of removal and order removing him to Mexico. Before this Court, Ramirez asserts that the IJ's refusal to reinstate his application violated his due process rights. Because this contention lacks merit, we will deny the petition for review.

I.

Ramirez is a citizen of Mexico who first entered the United States illegally in 1997. He has three U.S.-citizen children, and both of his parents live in the United States as lawful permanent residents. On July 19, 2010, after an Immigration and Customs Enforcement agent encountered Ramirez in a Pennsylvania jail where Ramirez was being held for driving under the influence, Ramirez was served a Notice to Appear before an IJ charging him as removable for illegal entry pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Ramirez — represented by Audrey Allen, the first of Ramirez's numerous attorneys in this proceeding — appeared before the IJ in August 2010, conceded his removability, and indicated his intent to apply for cancellation of removal under 8 U.S.C. § 1229b(b).[1]

---

[1] Under § 1229b(b), "[t]he Attorney General may cancel removal of, and adjust to the status of . . . an alien who is inadmissible or deportable from the United States if the alien--(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of [certain enumerated offenses]; and (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." The alien seeking cancellation of removal bears the burden of showing their eligibility for the relief; if he or

2

After two continuances, he filed the application in March 2011. Ramirez based his application on the hardship that would befall his children were he removed, especially his son, who suffers from a serious aural medical condition.

After obtaining two more continuances to collect additional information to support his claim of exceptional and extremely unusual hardship, Ramirez and Allen appeared before the IJ in November 2012. In separate discussions with Allen and Ramirez, the IJ described the additional evidence that he felt was needed to support a viable hardship claim and provided Ramirez another year to marshal those documents. The IJ sought more recent tax returns, bank records, evidence concerning Ramirez's payment of — and ability to continue paying — child support, documentation about his son's prognosis and the extent of Ramirez's involvement in his medical care, and proof of his parents' legal status. Through an interpreter, the IJ explained to Ramirez that it was his "burden to prove by a preponderance of the evidence that [he is] eligible for the relief," there were "lots of issues that are not clear on this record," and "if the record is ambiguous or you otherwise cannot prove that high level of hardship, then you cannot prevail on your case." Administrative Record ("AR") 132. Ramirez noted his understanding.

Ramirez failed to submit any additional evidence by the time of the subsequent hearing in December 2013, at which he was represented by Gonzalo Peralta, Allen's associate. The IJ initially engaged in a prolonged discussion with Peralta while Ramirez was out of the room. He reiterated to Peralta all the evidence that he had sought to

she carries that burden "the Attorney General may, in the exercise of his discretion, cancel the alien's removal." Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010).

complete the record and the purposes that those records served for the IJ's decision on the merits of the application, and Peralta explained that he could not supply the documents because after the previous hearing the firm had lost contact with Ramirez until just a few days earlier. The IJ opined that in light of the "massive . . . evidentiary gaps," it was "highly improbable that [Ramirez] is going to come close to meeting his burden of proof." AR 158, 160–61. The IJ asked whether Ramirez instead wanted to withdraw the application with prejudice, in exchange for an additional six-to-ten months to either voluntarily depart or — if Congress passed immigration reform — reopen the proceedings based on new statutory eligibility.

Following a recess during which Peralta discussed the options with Ramirez, the hearing recommenced with Ramirez and an interpreter present. The IJ recounted the understanding that he and Ramirez had reached in the prior hearing regarding the additional documentation and reiterated the "option" that he had "proposed" and which Peralta "said he's discussed with [Ramirez] in Spanish." AR 171. Ramirez asserted that he understood the options and that he accepted the offer to withdraw the application "freely and voluntarily after having extensive discussions with [his] lawyer" and having "weigh[ed] carefully" his options. AR 172, 178. Ramirez added his view that "I really don't have another option . . . since I didn't do what I was actually supposed to do" and thus that he "came to the conclusion on my own that the best route for me . . . would be to follow [the] advice [of] my attorney" to accept the deal. AR 178. The IJ confirmed that Ramirez's "application for cancellation of removal is withdrawn, which means it cannot be refiled," and continued the case for six months. AR 188.

4

At the next hearing, in June 2014, Ramirez appeared with new counsel, Modesta Paris, who sought reinstatement of Ramirez's application for cancellation of removal. Paris vaguely alluded to the possibility of raising an ineffective assistance of counsel claim and asserted that Ramirez had "some competency issues" relating to an "alcohol problem." AR 195. Paris stated that she was unsure whether Ramirez "understands the seriousness of the case" or "what withdrawal with prejudice meant." AR 195–96. The IJ replied that, unless she was intending to make a claim for ineffective assistance of counsel or to show that "there was clearly a lack of understanding and competence cognitively as opposed to buyer's remorse on a strategic decision that was made by prior counsel after consultation with him," he was unlikely to reopen the application, because both Ramirez and Peralta had explicitly asserted that Ramirez understood the ramifications of his withdrawal. AR 196–97. The IJ afforded Paris three months to determine whether to file such a claim.

In August 2014, Paris filed a motion to reinstate the application asserting that Ramirez's alcoholism was the cause of his failure to cooperate with counsel and that the IJ improperly withheld the right to a full hearing. Although raising veiled complaints about prior counsel's "[d]eficiencies," the motion did not assert a claim of ineffective assistance of counsel, and Paris later confirmed that they were not raising one. AR 283. The IJ gave Ramirez an additional 60 days to submit an affidavit concerning what he did or did not understand when withdrawing his application and to reach out to prior counsel for their views. Prior to submitting those documents, Paris withdrew as counsel.

5

Ramirez was represented at the subsequent two hearings by other attorneys, but they likewise withdrew. Thereafter, Ramirez's current counsel, Christine Flowers, appeared with Ramirez before the IJ in February 2017. Relying on BIA precedent and unpublished opinions of this Court, the IJ denied the motion to reinstate the application on the basis that the withdrawal was a strategic decision reached with the advice of counsel, and ordered Ramirez removed to Mexico. Ramirez appealed to the BIA, which adopted the IJ's reasoning that Ramirez had not articulated a sufficient basis to reinstate his application and dismissed the appeal. Ramirez timely filed a petition for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) and consider constitutional claims de novo. Romanishyn v. Att'y Gen., 455 F.3d 175, 185 (3d Cir. 2006). Where the BIA adopts the IJ's reasoning, we consider both decisions. Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008).

Ramirez purports to raise a single issue on appeal: "[W]hether an alien Petitioner has been denied due process when the Immigration Judge pre-termitted his request for cancellation of removal based primarily upon his failure to provide a complete record of evidence within the time frame established by the Immigration Judge," where the failure to comply was a result of a substance abuse problem. Ramirez Br. iv. But in reality, he conflates two distinct claims: (1) that his alcoholism was the cause of his failure to cooperate with counsel during the year-long period provided for him to marshal the evidence needed to prove hardship, and (2) that, due to his alcoholism, his decision to withdraw his application was unknowing and so the application should be reinstated.

6

Assuming that Ramirez had evidentiary support for the first argument — and he provided none — that still would not change the outcome of this case, because the IJ did not deny Ramirez's application based on the failure to present evidence. Rather, as detailed above, after the IJ explained in detail over the course of two hearings that, without the required evidence, Ramirez would be unlikely to meet his burden to prove hardship, the IJ suggested that Ramirez might consider withdrawing the application in exchange for receiving additional time to hope for a change in the law or to voluntarily depart.[2] In response to this offer — and after discussing the matter with counsel — Ramirez agreed to withdraw the application. Although Ramirez may have withdrawn his application in order to preempt the IJ from denying the application based on the failure to provide the corroboration evidence when due, the IJ never actually made such a ruling,

---

[2] Ramirez seems to assert that by doing so, the IJ violated his Fifth Amendment due process rights to a fair hearing. Ramirez. Br. 7; see Romanishyn, 455 F.3d at 185 (explaining that, in the immigration context, due process requires "a full and fair hearing and a reasonable opportunity to present evidence"). But the record belies such a claim. The IJ merely made clear that, if he went forward, Ramirez would be unlikely to meet his burden of proof. The IJ did not forbid Ramirez from attempting to prove his case if he so chose, and the IJ's repeated continuances and long colloquies demonstrate instead his consistent attempts to help Ramirez present a viable case. But even if the IJ's refusal to reinstate the application was of a constitutional dimension, "[d]ue process challenges to deportation proceedings require an initial showing of substantial prejudice," which Ramirez has failed to make. Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (quoting Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997)). Ramirez had presented no record evidence to fill the evidentiary gaps noted by the IJ, and so he has not carried his burden to establish that he was seriously prejudiced by the IJ's failure to reconsider his unsupported petition.

and so Ramirez cannot base his attack on the withdrawal upon the IJ's failure to be more flexible with deadlines in light of Ramirez's alcoholism.[3]

The only basis for undoing Ramirez's consensual withdrawal of the application would be to show that his decision to do so was not knowing, voluntary, and intelligent at the time it was made. See, e.g., Richardson v. United States, 558 F.3d 216, 219–20 (3d Cir. 2009). But on this point, counsel merely attests that Ramirez might not have fully understood the weight of his decision to withdraw the application. Ramirez Br. 5. Presumably, Ramirez's alcoholism could have played a role in his failure to appreciate the gravity of the decision, but counsel gives no indication that Ramirez was under the influence of alcohol when he agreed to withdraw the application, and even if she did, counsel's "unsupported assertions" before the IJ and to this Court do not constitute evidence. INS v. Phinpathya, 464 U.S. 183, 204 (1984). There is no evidence in the record — such as an affidavit from Ramirez — attesting that he was under the influence of alcohol or otherwise incompetent on the day of the hearing or that he did not understand the consequences of his actions, and our own review of the record confirms that in his colloquy with the IJ, Ramirez seems coherent.[4] At that hearing, Ramirez stated

---

[3] Moreover, given that the IJ was not made aware of Ramirez's alcoholism until the hearing following Ramirez's withdrawal of the application, Ramirez's challenge that the IJ "hew[ed] far too strictly to time limitations when it was made clear . . . that [Ramirez] was suffering from various competency issues" is unpersuasive. Ramirez Br. 2. By the time the IJ was told about the alleged competency issues, the time limitations issue was a dead letter. By then, in light of Ramirez's withdrawal of his application, the only issue before the IJ was whether that decision was knowing and voluntary.

[4] Ramirez appears to rely on attorney Paris's later statement — prior to having reviewed the transcripts — that Ramirez may not have "understood what withdrawn with prejudice meant." AR 196. But no record evidence supports this suggestion. In her

that he spoke to counsel and understood what he was doing, confirmed that the decision was voluntary and knowing, articulated accurately that he was in this position because he had failed to provide the necessary documentation despite having been afforded a year to do so, and recognized that his cancellation claim would therefore be unavailing and that this deal offered him the best hope of remaining. Ramirez does not argue that counsel rendered ineffective assistance, as would be required if Ramirez were challenging the accuracy of counsel's representations or the adequacy of counsel's explanation of the consequences of withdrawing the application. The record thus reflects that Ramirez acted knowingly and intelligently. At the least, his level of awareness is surely sufficient to support the relinquishment of his statutory right to seek a form of relief, the availability of which is in any event subject to agency discretion. See Richardson, 558 F.3d at 221 (regarding stringencies of waiver requirements, noting the "distinction between fundamental constitutional rights . . . and rights granted by statutes").

We are thus left with a generalized and unsubstantiated claim that Ramirez did not competently withdraw his application. However, counsel represented to the IJ that he explained to Ramirez the consequences of the withdrawal, Ramirez asserted that he understood those consequences, and Ramirez does not now argue that counsel misled him or the IJ. In such a case "where an attorney advises a client, as a tactical matter, to seek

---

motion to reinstate, Paris does not assert that Ramirez failed to comprehend the weight of the withdrawal, but instead blamed the alcoholism for his failure to "cooper[ate] with his own case," AR 279, an infirmity that we already explained is an inadequate basis to overturn a subsequent and otherwise knowing waiver. On appeal, Ramirez fails in any way to meaningfully link his alcoholism with his decision to withdraw his application.

9

voluntary departure rather than pursue other forms of relief, the proceedings remain fundamentally fair." Jiang v. Mukasey, 522 F.3d 266, 270 (2d Cir. 2008) (citing Magallanes-Damian v. INS, 783 F.2d 931, 934 (9th Cir. 1986)).  This is especially true where the requested relief — reopening the proceedings for cancellation of removal — is a discretionary matter committed to the IJ, 8 C.F.R. § 1003.23(b)(1)(iv), which the BIA will not reconsider where, as here, the "right to apply for such relief was fully explained . . . and an opportunity to apply therefore was afforded at the former hearing," id. § 1003.2(c)(1).  Given that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie," Ramirez's due process claim fails at the outset because the reopening of his application, after he voluntarily and intelligently withdrew his application in exchange for additional time in-country (a benefit he has reaped in spades by remaining what is now nearly five additional years), is simply not a process to which he was due.  Mudric v. Att'y Gen., 469 F.3d 94, 98 (3d Cir. 2006).

## III.

For the foregoing reason, we will deny the petition for review.

10