NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1183

_____

WILDER ESTUARDO CORDON-SALGUERO,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of an
Administrative Order of Removal
of the Department of Homeland Security
(A094-933-170)
Immigration Judge: Matthew Watters
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 14, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges.*

(Opinion Filed: March 5, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Wilder Estuardo Cordon-Salguero petitions for review of a decision of an Immigration Judge ("IJ") concluding that he was not entitled to relief from reinstatement of a prior order of removal. The IJ concurred in the asylum officer's conclusion that Cordon-Salguero had neither a reasonable fear of torture, as required for relief under the Convention Against Torture ("CAT"), nor a reasonable fear of persecution based on his race, religion, nationality, political opinion, or membership in a particular social group, as required for withholding of removal. Finding that substantial evidence supports the IJ's decision, we will deny the petition for review.

## I. Background

Cordon-Salguero, a native and citizen of Guatemala, was ordered removed from the United States on February 4, 2007. That order was executed on February 16, 2007, when Cordon-Salguero was removed to Guatemala. Approximately one week later, he left Guatemala to return to the United States, illegally re-entering the United States in approximately April 2007.

After returning to the United States, Cordon-Salguero lived in Pennsylvania until December 17, 2019. On that date, "Philadelphia Fugitive Operations officers[,] . . . [who] were conducting surveillance . . . looking for the subject, Wilder Estuardo CORDON-Salguero, who had come to the attention of ICE as a previously removed alien that might have illegally re-entered the United States," arrested him. DHS R. 4-5. That same day,

2

the Department of Homeland Security ("DHS") notified Cordon-Salguero of its intent to reinstate his prior removal order. In response, Cordon-Salguero "express[ed] a fear of returning to the country of removal," as required by 8 C.F.R. § 208.31(a). As a result, he was referred to an asylum officer for a reasonable fear interview. 8 C.F.R. § 208.31(b). The purpose of the reasonable fear interview is to give the alien an opportunity to "establish[] a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. § 208.31(c).

On January 2, 2020, Cordon-Salguero received a Notice of Reasonable Fear Interview, stating that the interview was being rescheduled, apparently due to his request for an attorney. On January 6, 2020, Cordon-Salguero's reasonable fear interview was terminated because Cordon-Salguero did "not want to do the interview without [his] attorney present." A.R. 55. The asylum officer explained that he could "reschedule one more time for [Cordon-Salguero] to get in touch with [his] attorney," but that, unless Cordon-Salguero's attorney submitted a G28 form reflecting his representation, the attorney would not be able to participate in the rescheduled interview. *Id.* The record reflects that counsel entered his appearance on a G28 form on January 6, 2020. The asylum officer also informed Cordon-Salguero that "this will be the last time we reschedule." *Id.*

On January 8, 2020, Cordon-Salguero appeared for his rescheduled reasonable fear

3

interview. After two calls to Cordon-Salguero's attorney were not answered, the asylum officer suggested that they "get started and in 5 minutes [they] can call back to see if [the attorney is] in the office." A.R. 57. Cordon-Salguero agreed to this proposed course of action. After gathering preliminary background information, the asylum officer again attempted to contact the attorney. When the attorney did not answer the phone, the asylum officer asked Cordon-Salguero if he would proceed without counsel. Cordon-Salguero orally agreed, A.R. 59, and then signed a Waiver of Presence of Representative form, stating that "[he understood] that [he] may have a representative present during [his] interview" and that he "knowingly waive[d] [his] right to have a representative present, and want[ed] to proceed with the interview by [himself] and without a representative," A.R. 65.

During the interview, Cordon-Salguero expressed a fear of returning to Guatemala because he had previously rejected a gang's recruitment efforts. Specifically, he stated that when he was attending school at the age of 18, the "18 gang" had threatened him twice regarding his refusal to join the gang, saying that "the third time, they were not going to forgive [him] and they were going to torture [him]." A.R. 59. However, Cordon-Salguero noted that the gang had never harmed him. With his father, Cordon-Salguero reported these threats to the police, but, due to his fear of the gang, he left Guatemala almost immediately after speaking with the police. As a result of his departure from the country, he did not know if the police investigated the threats. He did, however, hypothesize that the police would not do anything because of widespread corruption in

4

Guatemala.

The asylum officer found that none of these claims supported a reasonable possibility that Cordon-Salguero would be persecuted or tortured upon return to Guatemala. Pursuant to 8 C.F.R. § 208.31(f), Cordon-Salguero sought review of this decision before an IJ.

Before the IJ on January 22, 2020,[1] Cordon-Salguero expressed the same concerns he had raised before the asylum officer – that he feared torture by the gang and that the government would not help him. The IJ concluded that Cordon-Salguero had "not established a reasonable possibility that [he] would be persecuted on the basis of a protected ground, or a reasonable possibility that [he] would be tortured in Guatemala." A.R. 11.

Later that day, the IJ reopened the proceedings because Cordon-Salguero's attorney had contacted the immigration court. Cordon-Salguero's counsel "had thought that [the] hearing was more for the custody redetermination, if not reasonable fear [which was why he] was behind the 8 ball with regards to today's hearing." A.R. 16. Since counsel "had not reviewed what had happened at the reasonable fear interview," A.R. 16, the IJ temporarily adjourned the proceedings to allow counsel to review the reasonable fear interview notes.

When the hearing resumed, the IJ noted that he was "completely willing to hear

---

[1] Cordon-Salguero appeared by video from the Pike County Detention Center.

whatever evidence or other information [Cordon-Salguero] and [his] attorney want the Court to consider, and [the IJ] will then make an independent, new decision whether [the] prior ruling should remain, or be changed." A.R. 26. After Cordon-Salguero's counsel made an opening statement, he questioned Cordon-Salguero about his experience in Guatemala, and then made a closing statement. Counsel conceded that there was not "a substantial amount of evidence that there had been any past persecution" since there had only been threats and "no physical harm" to Cordon-Salguero. A.R. 26. Acknowledging that "the nexus element of this is going to be difficult to sustain," counsel asserted that the particular social group to which Cordon-Salguero belonged was either his family or the group of individuals returning from the United States to Guatemala. A.R. 27.

After hearing the new testimony,[2] as well as counsel's arguments, the IJ again concluded that Cordon-Salguero had "not established a reasonable possibility that he will be persecuted on the basis of a protected ground, or a reasonable possibility that he would be tortured." A.R. 39. The IJ explained that Cordon-Salguero had "failed to assert a protected ground at the outset." *Id.* Not only that, but "the purported particular social groups . . . don't seem to be rooted in the evidence." *Id.* Finally, the IJ found "there was no evidence of torture," nor was there evidence of acquiescence "since there was no allegation that the government was engaged in the torturous conduct." *Id.* at 39-40. The IJ filed an order reflecting his oral conclusions. This timely appeal followed.

---

[2] Cordon-Salguero's testimony reflected the concerns he had previously raised before the asylum officer and in his testimony before the IJ earlier in the day.

## II. Discussion

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020). We review an IJ's reasonable fear determination for substantial evidence.[3] *Id.* at 342. This is an "extraordinarily deferential standard," where we uphold the IJ's findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 340 (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)). "When we review for substantial evidence, 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting *Sandie v. Att'y Gen.*, 562 F.3d 246, 251 (3d Cir. 2009)).

Before us, Cordon-Salguero raises two arguments. First, he asserts that he was denied his right to counsel during the reasonable fear interview. Second, Cordon-Salguero argues that the IJ erred in concluding that he failed to demonstrate a reasonable possibility that he would suffer persecution or torture. Specifically, he argues that "it appears that the asylum officer and Immigration Judge prejudged Mr. Cordon-Salguero's claimed fear on

---

[3] In its brief, the government argued strenuously that we should review the IJ's "determination for a facially legitimate and bona fide reason." Br. for Respondent 13. Our decision in *Romero*, issued after the government filed its brief here, rejected that argument and established that we review an IJ's reasonable fear determination for substantial evidence. *Romero*, 972 F.3d at 337. Given the impact of the *Romero* decision on this case, the government would have been wise to inform of us of the requisite change in its position based on that decision, pursuant to Federal Rule of Appellate Procedure 28(j).

the merits," Pet'r's Br. 24, and that the IJ erred by "requir[ing] a conclusive showing that the non-citizen's feared harm ha[d] a nexus to a protected ground," *id.* at 25. Neither argument has merit.

## A.  Right to Counsel

The record fails to support Cordon-Salguero's argument that he was denied his right to counsel. Rather than being denied counsel during the reasonable fear interview with the asylum officer, Cordon-Salguero waived his right to counsel.

While aliens have a statutory right to counsel,[4] it is clear "that 'there is no Sixth Amendment right to counsel in deportation hearings,'" because "[d]eportation proceedings are not 'criminal prosecutions.'" *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 374 (3d Cir. 2003). Rather, "[t]he constitutional right to counsel is based upon the Fifth Amendment's guarantee of due process." *Id.* As in criminal proceedings, aliens can waive their rights. *Richardson v. United States*, 558 F.3d 216, 219-20 (3d Cir. 2009) ("An alien validly waives his rights associated with a deportation proceeding only if he does so voluntarily and intelligently."). "[O]ne way to signify a knowing and intelligent waiver is a written document to that effect." *Id.* at 220. "[W]hen challenging the validity of a written waiver of rights in a deportation proceeding, the alien bears the burden of proving that the waiver is invalid." *Id.* at 222. To challenge a written waiver, an alien must "provide reasons and supporting evidence to explain why the waiver should not be given effect." *Id.*

---

[4] The regulations provide that an "alien may be represented by counsel" at a reasonable fear interview. 8 C.F.R. § 208.31(c).

Cordon-Salguero did not challenge the validity of his written waiver in his opening brief. Rather, he raised this point for the first time in his reply brief. "We have long recognized, consistent with Federal Rule of Appellate Procedure 28(a) and Third Circuit Local Appellate Rule 28.1, that an appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal." *Barna v. Bd. of Sch. Dirs. of Panther Valley*, 877 F.3d 136, 145 (3d Cir. 2017). We will not "reach arguments raised for the first time in a reply brief." *Id.* at 146.

Even if we were to consider the arguments raised in Cordon-Salguero's reply brief, we would conclude that the waiver was intelligent, knowing and voluntary. The record before us clearly indicates that Cordon-Salguero knew he had a right to be represented by counsel at his reasonable fear interview. On two occasions, he asked that the interview be postponed in order to obtain counsel. During his rescheduled interview, the asylum officer attempted to contact Cordon-Salguero's attorney, without success. After several attempts to contact counsel failed, Cordon-Salguero signed a Waiver of Presence of Representative form.

At the hearing before the IJ, Cordon-Salguero's counsel acknowledged that Cordon-Salguero had waived counsel's presence at the interview, stating that Cordon-Salguero "wanted [counsel] to be part of [the reasonable fear interview], however [counsel] was unable to be part of it, so [Cordon-Salguero] waived [counsel's] appearance." A.R. 18.

Nothing in the record leads us to believe that Cordon-Salguero somehow became

9

confused as to his ability to have counsel present at the interview. Rather, his repeated assertion of his desire to have counsel represent him demonstrates his clear knowledge of his right and leads us to conclude that his subsequent waiver of the right was intelligent and knowing.

Similarly, there is no evidence in the record that this waiver was not voluntary. We therefore conclude that the waiver was intelligent, knowing and voluntary.

Finding that the waiver was intelligent, knowing and voluntary, we need not address Cordon-Salguero's argument that he was prejudiced by the lack of counsel. *See Richardson*, 558 F.3d at 224 ("To establish that a deportation proceeding was fundamentally unfair, an alien must show both that there was a fundamental defect in the proceeding and that the defect caused him prejudice."). Since Cordon-Salguero has failed to show that there was any fundamental defect in the proceeding, we need not reach the second step of evaluating his claim of prejudice.

## B. Error in the Finding of No Reasonable Fear

Cordon-Salguero's second argument also lacks any support in the record. Rather than prejudging Cordon-Salguero's claims, the record shows that both the asylum officer and the IJ allowed Cordon-Salguero to present his testimony. In addition, the IJ reopened the proceedings in order to allow Cordon-Salguero's counsel to elicit testimony from his client and present arguments on his behalf. The conclusory statements in Cordon-Salguero's brief that his case was prejudged simply lack merit.

Cordon-Salguero's assertion that the IJ improperly required his "feared harm [to have] a nexus to a protected ground," Pet'r's Br. 25, similarly lacks merit. The very definition of persecution requires "that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).[5] To argue that the IJ erred by expecting Cordon-Salguero to produce enough evidence to create a reasonable possibility that he would be persecuted based on a protected ground is frivolous.

To the extent that Cordon-Salguero argues the IJ required him to "conclusively demonstrate" persecution, Pet'r's Br. 23, nothing in the record suggests the IJ imposed this higher standard of proof. Instead, the record makes clear that the IJ only sought enough evidence to demonstrate a reasonable possibility that Cordon-Salguero would

---

[5] The regulations also define persecution as being based on "race, religion, nationality, membership in a particular social group or political opinion." 8 C.F.R. § 208.31(c).

suffer persecution if returned to Guatemala. We therefore conclude that the IJ did not prejudge this matter. We further conclude that the IJ applied the correct definition of persecution and the appropriate standard of proof.

### III. Conclusion

For the foregoing reasons, we will deny the petition for review.