**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3545
_____

UNITED STATES OF AMERICA

v.

JOSE CHAVES-LEIVA,
also known as Jose Amando Chaves,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00247-001)
District Judge:  Hon. Gerald A. McHugh

Argued:  October 31, 2018

Before:  CHAGARES, JORDAN, and VANASKIE,[*] Circuit Judges.

(Filed:  August 20, 2019)

---

[*] The Honorable Thomas I. Vanaskie retired from the Court on January 1, 2019, after the argument and conference in this case, but before the filing of the opinion.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

Christy Martin
Jacob Schuman **[ARGUED]**
Federal Community Defender Office
For the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

      Counsel for Appellant

Terri A. Marinari
Robert A. Zauzmer **[ARGUED]**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

      Counsel for Appellee

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

Jose Chaves-Leiva filed this appeal to challenge his criminal conviction for illegal reentry after removal. Specifically, he appeals the denial of his motion to dismiss the indictment, in which he attempted to attack collaterally his 2008 removal order underlying the offense of conviction. Central to this appeal is the validity of a "Stipulated Request for Removal Order and Waiver of Hearing" (the "Stipulated Request") signed by Chaves-Leiva while proceeding pro se. An Immigration Judge ("IJ") determined that his waiver before the immigration court was voluntarily,

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

knowingly, and intelligently executed and entered the removal order. The District Court held a full hearing including testimony and rejected Chaves-Leiva's arguments that the Stipulated Request he signed was not voluntary, knowing, and intelligent, and concluded that his removal was not fundamentally unfair. We agree and will affirm the District Court's denial of Chaves-Leiva's motion to dismiss the indictment.

I.

Costa Rican native Chaves-Leiva has attempted to enter the United States without permission numerous times since the late 1990s. In 1999, he was apprehended at the border six times. After falsely claiming Mexican citizenship and providing at least two aliases and two different dates of birth, Chaves-Leiva was permitted, after those six unlawful entries, to return voluntarily to Mexico.

Chaves-Leiva illegally entered the United States again some time before March 2001, when he married an American citizen in New Jersey. In 2007, Chaves-Leiva was charged in Ohio with attempted assault. In February 2008, he was arrested in Ohio again, charged with public intoxication, and transferred into the custody of the United States Immigration and Customs Enforcement ("ICE"). On February 29, 2008, Chaves-Leiva was served with a Notice to Appear ("NTA"), typed in English, and a Notification of Rights ("NOR"), typed in Spanish, a language he could read and understand. The NOR informed Chaves-Leiva that he had the right to consult an attorney and the right to a removal hearing. Chaves-Leiva indicated on the NOR his request for a removal hearing before an IJ.

3

Nevertheless, on March 11, 2008, prior to any removal hearing, Chaves-Leiva signed the Stipulated Request, in which he waived his previously invoked right to a hearing. The Stipulated Request, printed in both English and Spanish, advised Chaves-Leiva of his right to counsel, identified certain rights that would be waived if the form were signed, and explained the consequences of removal pursuant to the stipulation. It also contained the following statements, with the corresponding Spanish translations:

> 10. I request that my removal from the United States be based solely on the stipulated order. By signing this stipulation, I understand that I am giving up the right to appear before an immigration judge and that I will be removed from the United States without a hearing.
>
> . . .
>
> 12. I understand the consequences of this Stipulated Request for Order, Waiver of Hearing are that I will be removed from the United States. I make this request voluntarily, knowingly, and intelligently.
>
> . . .
>
> 16. ___ I have read or ___ I have had read to me in a language I understand, this entire document. I fully understand its consequences. I submit this request for removal voluntarily, knowingly, and intelligently. I realize that by signing this document, I will be removed from the United States.

Joint Appendix ("J.A.") 44–45. Checkmarks were placed in both blank spaces in the Spanish translation of paragraph 16. Both Chaves-Leiva and an ICE agent signed the Stipulated Request, with the latter certifying that he had "explained the contents and meaning of th[e] document to [Chaves-Leiva] in the language which [he] underst[ood]." J.A. 46. Chaves-Leiva was not represented by counsel when he executed the form.

4

On March 17, 2008, acknowledging the language of the Stipulated Request, an IJ found Chaves-Leiva's waiver voluntary, knowing, and intelligent. Upon a "review of the charging document and the written stipulation," the IJ determined that Chaves-Leiva was removable and ordered his removal to Costa Rica. J.A. 50.

Chaves-Leiva was removed on April 28, 2008 without contesting his removal in any way. Thereafter, he was found in the United States twice in 2008 and once in 2009. Chaves-Leiva was removed after each reentry, but after the second reentry in 2008, he was also indicted for, and he pled guilty to, illegally reentering the country.

In 2017, Chaves-Leiva was found in the United States once again after his eleventh illegal entry, according to the record. He was arrested by the state police in Pennsylvania for, inter alia, forgery related to a driver's license, and subsequently indicted in federal court for illegal reentry under 8 U.S.C. § 1326(a) and (b)(1).

Chaves-Leiva moved to dismiss the indictment by attempting to attack collaterally his underlying 2008 removal pursuant to 8 U.S.C. § 1326(d). He argued that his removal was fundamentally unfair because he did not voluntarily, knowingly, and intelligently waive his right to a hearing and to apply for relief from removal in 2008. The District Court held an evidentiary hearing on the motion to dismiss the indictment and heard the testimony of, among others, Chaves-Leiva and the ICE agent who provided him with the NTA, NOR, and Stipulated Request. Although the ICE agent did not remember processing Chaves-Leiva specifically, he testified as to how he processed immigrants in February of 2008.

5

After considering the testimony and the record, the District Court concluded that Chaves-Leiva did not establish that his removal was fundamentally unfair, and so it denied his motion to dismiss. It determined that the NOR and the Stipulated Request informed Chaves-Leiva in his native language of his rights and of possible avenues for relief from removal, and was not persuaded by "his claim that he did not understand his rights as of 2008." J.A. 13.

The District Court additionally rejected Chaves-Leiva's claim that he was pressured by ICE into signing the Stipulated Request. It was persuaded by the ICE agent's testimony that the document is not prepared until an immigrant requests it, and it found that Chaves-Leiva requested a meeting with ICE and that that request was marked as closed the day after the Stipulated Request was signed. The court also rejected the argument that "the prospect of quick[ly] resol[ving] . . . the case" by signing a Stipulated Request "undermined the voluntariness of Mr. Chaves-Leiva's decision" because that possibility could be attributed to the situation, not ICE, and, in any event, the court could not "conclude that the length of time here amounted to 'fundamental unfairness.'" J.A. 12. It ultimately determined that Chaves-Leiva "was unable to articulate any specific action [by ICE] that might be deemed coercive" and "did not demonstrate that he was intimidated or unable to assert his rights." J.A. 10, 13.

6

Chaves-Leiva entered a conditional guilty plea to the charge of illegal reentry, reserving his right to challenge the denial of his motion to dismiss, and was sentenced to eight months of imprisonment.[1]  He now appeals.

## II.

The District Court had jurisdiction over this matter under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.  When reviewing the District Court's disposition of Chaves-Leiva's attempt to attack his 2008 removal collaterally, we will uphold the court's findings of fact unless they are clearly erroneous, but review de novo its legal conclusions.  Richardson v. United States, 558 F.3d 216, 219 n.3 (3d Cir. 2009).

## III.

An element of Chaves-Leiva's offense of illegal reentry is the existence of a removal order.  United States v. Torres, 383 F.3d 92, 95 (3d Cir. 2004).  The Supreme Court in United States v. Mendoza-Lopez, 481 U.S. 828, 837–39 (1987), held that an immigrant may collaterally attack such an administrative order in a criminal case, but only in limited circumstances.  Those circumstances were later codified in 8 U.S.C. § 1326(d), which provides that:

---

[1] Although Chaves-Leiva has served his sentence and has been removed, his appeal is not moot.  "When [a] defendant challenges his underlying conviction, th[e Supreme] Court's cases have long presumed the existence of collateral consequences," permitting the defendant "to continue his appeals after the expiration of his sentence." United States v. Juvenile Male, 564 U.S. 932, 936 (2011) (emphasis omitted); see also United States v. Huff, 703 F.3d 609, 611 (3d Cir. 2013) (acknowledging this presumption.

> In a criminal proceeding under this section, an alien may not challenge the validity of the [removal] order . . . unless the alien demonstrates that—
>> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>> (2) the [removal] proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Because the three requirements of § 1326(d) are conjunctive, each must be satisfied to pursue a collateral challenge to a removal order. Torres, 383 F.3d at 99. In addition, it is the defendant who bears the burden of proof as to each of the three requirements. Richardson, 558 F.3d at 223.

This case turns upon whether the entry of Chaves-Leiva's 2008 removal order was fundamentally unfair. As we have recognized, a defendant may establish fundamental unfairness when both "[1] there was a fundamental defect in the proceeding[,] and [2] the defect caused him prejudice." Id. at 224; see also United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006). We review whether the District Court erred in finding no fundamental unfairness in entry of the 2008 removal order.[2] We conclude that the court's findings were not clearly erroneous.

---

[2] The arguments pursued by Chaves-Leiva have evolved over the course of time. On appeal, Chaves-Leiva chiefly argues that his removal order was fundamentally unfair because of an alleged regulatory violation of 8 C.F.R. § 1003.25(b), which he suggests requires procedures beyond an IJ's review of the Stipulated Request. But § 1003.25(b) was not even mentioned in his opening brief before the District Court. We need not address Chaves-Leiva's regulatory argument because we will affirm the District Court's finding of no fundamental unfairness, for the reasons discussed herein.

An order of removal stipulated to by the immigrant and the agency — like the one at issue here — may be entered by an IJ "without a hearing . . . based on a review of the charging document, the written stipulation, and supporting documents, if any." 8 C.F.R. § 1003.25(b). "If the alien is unrepresented, the [IJ] must determine that the alien's waiver is voluntary, knowing, and intelligent." Id.

Chaves-Leiva argued before the District Court that he did not voluntarily, knowingly, and intelligently waive his right to a hearing because he was pressured into signing the Stipulated Request, which was not adequately explained to him, and he did not receive an explanation of potential defenses to removal. After a full evidentiary hearing and upon consideration of the record, the District Court rejected Chaves-Leiva's arguments. It found that Chaves-Leiva had been advised in Spanish of his rights, the existence of possible defenses, and the consequences of executing the Stipulated Request. The court did not believe Chaves-Leiva's "claim that he did not understand his rights as of 2008," given his "careful[] formulat[ion of] certain answers" during the hearing and his strategic misrepresentation of his country of origin as Mexico during earlier apprehensions at the border (which allowed him to avoid detention and "be immediately returned across the border"). J.A. 13–14. And the District Court found that Chaves-Leiva was not pressured by ICE into signing the Stipulated Request, but rather that the document was prepared after Chaves-Leiva requested it. Finally, the court rejected the argument that "the prospect of quick resolution of the case" upon signing the Stipulated Request "undermined the voluntariness of Mr. Chaves-Leiva's decision," finding that

"the difference in time between agreeing to stipulate to removal and seeking a hearing before an immigration judge was not oppressive." J.A. 12.

Having reviewed the record, there was no clear error in the District Court's factual findings. See Richardson, 558 F.3d at 219 n.3. The Stipulated Request and NOR explicitly informed Chaves-Leiva, in Spanish, of his rights and the existence of potential defenses.[3] It is undisputed that Chaves-Leiva can "read, write and understand Spanish," and that he signed both documents. J.A. 100. The agent testified that his signature on the Stipulated Request indicated his "understanding [that the immigrant] had an opportunity to read or have [the document] read to [him]." J.A. 206. Indeed, by signing the form, the agent "certif[ied] that . . . [he] ha[d] explained the contents and meaning of th[e] document to [Chaves-Leiva] in the language which [he] underst[ood]." J.A. 46. And Chaves-Leiva certified on the Stipulated Request that "all the information [he] ha[d] given" therein was "true and correct," including his statement that he had read or had read to him the entire Stipulated Request. J.A. 45.

And there is ample support for the District Court's finding that Chaves-Leiva was not pressured into signing the Stipulated Request. Although Chaves-Leiva testified that

---

[3] We are well aware of the "grave consequences of removal" to immigrants, as well as their families and others. Leslie v. Att'y Gen., 611 F.3d 171, 181 (3d Cir. 2010). Immigration laws and procedures are complex and can be highly confusing to those acting pro se. But there is no right to an appointed attorney in immigration proceedings, and many immigrants cannot afford an attorney. We laud those attorneys who assist immigrants for little or no money. In this case, the District Court found that lists of such attorneys were available to Chaves-Leiva, see J.A. 10, and the Stipulated Request signed by him acknowledged that he was "provided a copy of the List of Free Legal Services Providers," J.A. 42. See also J.A. 360 (advising of the availability of a list of no-cost attorneys and organizations).

the ICE agent approached him with the waiver "three to four times a week" for one month before he signed it, Chaves-Leiva was only detained for approximately two weeks before he signed the Stipulated Request, and the agent explicitly denied any recollection of approaching an immigrant with the form "without [his] making a request," let alone "going to see someone three or four times in a week and bringing the form and asking [him] to sign it." J.A. 103, 207–08. Instead, the ICE agent testified that, according to his practice, a request by an immigrant "would have caused [him] to generate" the Stipulated Request, and, indeed, the record reveals that Chaves-Leiva submitted an inmate service request form that was referred to ICE on March 6, 2008 and returned on March 12, 2008, the day after he executed the Stipulated Request. J.A. 200. Moreover, the ICE agent testified that it was his practice to give immigrants as much time as they needed to read an NOR and a stipulated request, and that he did not recall ever rushing an immigrant through either document.

Based on this record, we conclude that the District Court did not clearly err in finding that Chaves-Leiva voluntarily, knowingly, and intelligently signed the Stipulated Request.[4] And we agree with the court's legal conclusion flowing from that finding.

---

[4] Chaves-Leiva appears to argue that the District Court did not actually determine that his waiver was voluntary, knowing, and intelligent because it "never purported to make any findings about [his] state of mind when he signed the waiver." Chaves-Leiva Reply Br. 11. We reject this argument. Chaves-Leiva's motion to dismiss the indictment was premised on the argument that his "waiver of rights contained in the Stipulated Request was not knowing, intelligent, or voluntary." J.A. 28. That is the motion that the court denied. In doing so, it carefully addressed the bases upon which Chaves-Leiva relied to challenge the validity of the Stipulated Request and found that he had failed to demonstrate fundamental unfairness. That the court did not use the phrase "voluntary,

11

That is, because the District Court found that Chaves-Leiva voluntarily, knowingly, and intelligently waived his rights, it properly concluded that Chaves-Leiva failed to establish fundamental unfairness and therefore could not succeed on his attempted collateral attack, warranting a denial of his motion to dismiss the indictment.[5]

## IV.

For the aforementioned reasons, we will affirm the order of the District Court denying Chaves-Leiva's motion to dismiss his indictment.

---

knowing, and intelligent" does not detract from its conclusion that the waiver at issue was valid.

[5] To establish fundamental unfairness for the purposes of a collateral attack, Chaves-Leiva must prove both a fundamental defect and prejudice. Richardson, 558 F.3d at 224. Because Chaves-Leiva has not identified a fundamental defect, we decline to consider whether he has proven prejudice. See id. at 224 n.8 (finding no need to "reach the issue of whether [the alien] ha[d] demonstrated prejudice" in part "because we ha[d] already determined . . . that there was no fundamental defect in the deportation proceedings").

12